JOSHUA N. KASTAN (SBN 284767)
JNK@dkmlawgroup.com
**DKM Law Group, LLP**
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 421-1100
Facsimile: (415) 842-0095

Attorneys for Plaintiff,
BYLINE BANK

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BYLINE BANK,<br>an Illinois banking corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>GRIBBEN & ASSOCIATES, INC.; a California corporation; GRIBBEN HOLDINGS, INC., a California corporation; JNB TRANSPORT, LLC, a California limited liability company; GLORY ADVANCED SOLUTIONS, INC., a California corporation; TER TRANSPORT, INC., a California corporation; HAVANA INVESTMENT GROUP, LLC, a California limited liability company; THE DRA FAMILY TRUST DATED MAY 31, 2016; ARMADA TRUCKING GROUP INC., a California corporation; JORGE L. BLANCO; DAVER RODRIGUEZ ALVAREZ; STEVEN M. GRIBBEN; ERIC OROSCO; CRISTINA MORONTA; and DOES 1 through 50,<br><br>    Defendants. | CASE NO.: 2:24-cv-927<br><br>**COMPLAINT FOR:**<br><br>1. Breach of Contract;<br>2. Unjust Enrichment;<br>3. Promissory/Equitable Estoppel;<br>4. Adjudication of Security Interest;<br>5. Replevin;<br>6. Fraud/Misrepresentation;<br>7. Civil Conspiracy; and<br>8. Conversion.<br><br>---<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, BYLINE BANK, an Illinois banking corporation, as and for its Complaint against the above-named Defendants, states and alleges as follows:

1.    Plaintiff, BYLINE BANK ("Byline"), is an Illinois banking corporation, with its main office and principal place of business located at 180 North LaSalle Street,

Chicago, Illinois 60601.  At all times pertinent hereto Byline has been an Illinois banking corporation, duly organized under the laws of Illinois.  As such, Byline is a citizen of the State of Illinois.

2.    Defendant, GRIBBEN & ASSOCIATES, INC. ("Gribben & Associates"), is, upon information and belief, a California corporation having a last known address of, and principal place of business at, 18201 Von Karman, Suite 300, Irvine, California 92612.  As such, Gribben & Associates is a citizen of the State of California.

3.    Defendant, GRIBBEN HOLDINGS, INC. ("Gribben Holdings"), is, upon information and belief, is, upon information and belief, a California corporation having a last known address of, and principal place of business at, 1267 Willis Street, Suite 200, Redding, California 96001.  As such, Gribben Holdings is a citizen of the State of California.

4.    Defendant, JNB TRANSPORT, LLC ("JNB"), is, upon information and belief, a California limited liability company having a last known address of, and principal place of business at, 401 S Main Street, Suite 101, Pomona, California 91766.  As such, JNB is a citizen of the State of California.

5.    Defendant, GLORY ADVANCED SOLUTIONS, INC. ("Glory"), is, upon information and belief, a California corporation having a last known address of, and principal place of business at, 13287 Babbling Brook Way, Corona, California 92800.  As such, Glory is a citizen of the State of California.

6.    Defendant, TER TRANSPORT, INC. ("TER"), is, upon information and belief, a California corporation having a last known address of, and principal place of business at, 614 Weng Star Street, Beaumont, California 92223.  As such, TER is a citizen of the State of California.

7.    Defendant, HAVANA INVESTMENT GROUP, LLC ("Havana"), is, upon information and belief, a California limited liability company having a last known address of, and principal place of business at, 9575 Laurel Canyon Blvd., Unit 1,

Arleta, California 91331.  As such, Havana is a citizen of the State of California.

8.     Defendant, THE DRA FAMILY TRUST DATED MAY 31, 2016 ("DRA Trust"), is, upon information and belief, a trust formed under the laws of the State of California, with Daver Rodriguez Alvarez as its primary trustee, who has a last known address of 16852 Katie Drive, Riverside, California 92504.  As such, DRA Trust is a citizen of the State of California.

9.     Defendant, ARMADA TRUCKING GROUP INC. ("Armada"), is, upon information and belief, a California corporation having a last known address of, and principal place of business at, 324 N Towne Ave, Pomona, California 91767.  As such, Armada is a citizen of the State of California.

10.     Defendant, JORGE L. BLANCO ("Blanco"), is, upon information and belief, a California resident and citizen whose last known address is 9575 Laurel Canyon Blvd., Unit 1, Arleta, California 91331.  As such, Blanco is a citizen of the State of California.

11.     Defendant, DAVER RODRIGUEZ ALVAREZ ("Alvarez"), is, upon information and belief, a California resident and citizen whose last known known address is 16852 Katie Drive, Riverside, California 92504.  As such, Alvarez is a citizen of the State of California.

12.     Defendant, STEVEN M. GRIBBEN ("Gribben"), is, upon information and belief, a California resident and citizen whose last known address is 103 Gardenview, Irvine, California 92618.  As such, Gribben is a citizen of the State of California.

13.     Defendant, ERIC OROSCO ("Orosco"), is, upon information and belief, a California resident and citizen, whose last known address is 13287 Babbling Brook Way, Corona, California 92800.  As such, Orosco is a citizen of the State of California.

14.     Defendant, CRISTINA MORONTA ("Moronta"), is, upon information and belief, a California resident and citizen whose known address is 16852 Katie Drive, Riverside, California 92504.  As such, Moronta is a citizen of the State of California.

15.    Defendants, DOES 1 through 50 are persons and/or entities who are presently unknown to Byline, but who may be in possession or control of the Collateral, as defined herein, and/or who may have participated in the conspiracy detailed herein.

16.    This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a), as this matter involves citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum specified in 28 U.S.C. § 1332(b).

17.    Venue is proper in the United States District Court for the Central District of California, Western Division, pursuant to U.S.C. § 1391(b)(2), because, among other things, the Collateral, as defined herein, is, upon information and belief, is or was located in the District.

## GENERAL ALLEGATIONS

18.    In early 2020, Blanco contacted Byline indicating that Blanco wished to acquire an existing business, Gribben & Associates, which acquisition would be primarily funded by a loan from Byline, through the 7(a) Loan Program of the U.S. Small Business Administration ("SBA").

19.    Loans made through the SBA 7(a) Loan Program are regulated by Rules established in the Code of Federal Regulations, as well as through Standard Operating Procedures (collectively, "SOPs"), issued, from time to time, by SBA.

20.    Only certain small businesses are eligible for a 7(a) SBA loan and, when eligible, lenders are required to properly structure, document, collateralize, service, and liquidate the loan, to preserve the Lender's SBA guaranty. Failure to adhere to SBA SOPs in any step of the loan process could result in SBA denying, or reducing the amount of, the guaranty.

21.    Gribben & Associates was 100% owned by Gribben.

22.    On February 18, 2020, Blanco formed Gribben Holdings to acquire 100% of the stock in Gribben & Associates owned by Gribben.

23.    On February 28, 2020, Gribben and Gribben Holdings made and entered into that certain Stock Purchase Agreement reflecting a purchase price of

$5,193,361.00, for Gribben Holdings to acquire 100% of the stock in Gribben & Associates owned by Gribben ("Gribben PA"). A true and correct copy of the Gribben PA is attached hereto as **Exhibit "A"** and is incorporated herein by reference.

24. Schedule A to the Gribben PA reflected the primary assets of Gribben & Associates, which consisted of 16 FedEx line haul routes.

25. Blanco, as the 100% stockholder of Gribben Holdings, sought a loan from Byline in the amount of $4,900,000.00.

26. At the time of the loan sought by Blanco, SBA SOPs specifically require, among other things, that:

    a. that for a stock acquisition of an existing corporation, the existing entity must be a co-borrower of the loan;

    b. that for an acquisition of an existing business, the borrower must inject equity of at least 10%; and

    c. that the equity be sourced from the to-be owner's personal assets.

27. Byline conducted due diligence consistent with SBA SOPs and Byline's commercial lending standards and, ultimately, Byline approved an SBA loan to-be-made to Gribben & Associates and Gribben Holdings as co-borrowers, in the amount of $4,900,000.00 ("SBA Loan").

28. Byline's approval of the SBA Loan is evidenced by that certain U.S. Small Business Administration Authorization (SBA 7(A) Guaranteed Loan) dated October 28, 2020 ("Authorization"). A true and correct copy of the Authorization is attached hereto as **Exhibit "B"** and is incorporated herein by reference.

29. On October 29, 2020, Gribben & Associates and Gribben Holdings (collectively, "Borrower"), made, executed, and delivered to Byline that certain U.S. Small Business Administration note in the original principal amount of $4,900,000.00 ("Note"). A true and correct copy of the Note is attached hereto as **Exhibit "C"** and is incorporated herein by reference.

30. The terms and conditions of the SBA Loan, evidenced by the Note, are

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**CASE NO. 2:24-cv-927**

further codified in that certain Loan Agreement executed by Borrower, in favor of Byline, dated October 29, 2020 ("Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit "D"** and is incorporated herein by reference.

31.    The Note is secured, in part, by that certain security agreement executed by Borrower, in favor of Byline, dated October 29, 2020 ("Security Agreement"), pursuant to which Borrower granted to Byline a security interest in, among other things, all goods, inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper (whether tangible or electronic), instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, commercial tort claims, contract rights and other rights to payment and performance (including but not limited to grant monies), insurance claims and proceeds, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all goodwill relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process and such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property of Borrowers (collectively, "Collateral"). A true and correct copy of the Security Agreement is attached hereto as

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**CASE NO. 2:24-cv-927**

**Exhibit "E"** and is incorporated herein by reference.

32.    Byline perfected its security interest in the Collateral by filing that certain UCC Financing Statement (UCC1) with the Office of the Secretary of State for the State of California on August 26, 2020, as Filing No. U200014626418, as amended by those certain UCC Financing Statement Amendments, each filed with the Office of the Secretary of State for the State of California on May 25, 2022, as Filing Nos. U220196778136, U220196883138, and U220196968038 (collectively, "Financing Statement"). A true and correct copy of the Financing Statement is attached hereto as **Exhibit "F"** and is incorporated herein by reference.

33.    The Note is further secured by those certain U.S. Small Business Administration unconditional guarantees respectively executed by JNB and Blanco (collectively, "Guarantors"), in favor of Byline, each dated October 29, 2020 (collectively, "Guarantees"). A true and correct copy of the Guarantees is attached hereto as **Exhibit "G"** and is incorporated herein by reference.

34.    The Note is additionally secured, in part, by an assignment of life insurance policy executed by Blanco, in favor of Lender, assigning to Lender a life insurance policy insuring the life of Blanco ("Assignment").

35.    The Note, Security Agreement, Financing Statement, Guaranty, Assignment, and all other documents executed in connection therewith shall hereinafter sometimes be referred to collectively as the "Loan Documents".

36.    On or around May 2022, Byline learned that Borrower's business location and truck yard each had been moved by Borrower, without prior notice to Byline.

37.    On May 2, 2022, Alvarez, from the email address mapleridgeinvestmentgroup@yahoo.com advised Byline of Borrower's new business and yard locations.

38.    At no time during Byline's due diligence before making the SBA Loan was it disclosed to Byline that Alvarez had any interest or control of Borrower or Borrower's business operations.

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**CASE NO. 2:24-cv-927**

39.     Byline, as required by SBA SOPs, conducted a site inspection of Borrower's new business and yard locations.

40.     Byline grew concerned about the change to Borrower's business and yard locations, along with the communication from Borrower, which was being led by Alvarez instead of Blanco.

41.     Through additional communications with Alvarez, and Blanco, it was disclosed to Byline that Borrower sold a portion of the Collateral, but that Borrower did not remit any proceeds of this sale to Byline.

42.     To evidence this sale of a portion of the Collateral, Alvarez and/or Blanco provided Byline with that certain Business Sale Agreement dated December 20, 2020, by and between Gribben & Associates and Armada, which purports to evidence the sale of 8 of the 16 FedEx line haul routes owned by Borrower, and subject to the perfected security interest of Byline, to Armada, for the amount of $1,650,000.00 ("Armada PA"). A true and correct copy of the Armada PA is attached hereto as **Exhibit "H"** and is incorporated herein by reference.

43.     The Armada PA was dated December 20, 2020, less than two months after the SBA Loan was made, on October 29, 2020.

44.     The Armada PA was executed by Gribben, as the Secretary of Gribben & Associates, despite the fact that Gribben resigned as the sole officer and director of Gribben & Associates, effective as of the date of the sale of Gribben's stock in Gribben & Associates to Gribben Holdings, at the time of the SBA Loan.

45.     Alvarez and/or Blanco advised Byline that the proceeds from the Armada PA and sale were invested by them and used by them for ongoing expenses, but the Armada sale proceeds of $1,650,000.00 ("Armada Sale Proceeds"), were fully depleted and lost by May 2022.

46.     None of the Armada Sale Proceeds were paid to Byline, despite Byline's perfected security interest in any proceeds derived from a sale of the Collateral.

47.     During ongoing communication between Byline, Alvarez and Blanco,

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. 2:24-cv-927

Byline was additionally advised that Borrower's remaining 8 of the 16 FedEx line haul routes owned by Borrower, and subject to the perfected security interest of Byline, had been lost and/or taken away from Borrower by FedEx.

48.    The disclosures by Alvarez and Blanco were of extreme concern to Byline, as the 16 FedEx line haul routes owned by Borrower were essentially 100% of the assets of Borrower and the security for the SBA Loan.

49.    Given Byline's extreme concern over the status of the SBA Loan and the Collateral, Byline conducted an examination and investigation into the due diligence, searches, documentation, and other information obtained in association with Byline making the SBA Loan and otherwise relating to the transaction funded by the SBA Loan.

50.    Byline's examination and investigation revealed numerous actions which evidence that the SBA Loan was obtained through false, improper, non-compliant, and fraudulent actions undertaken by a number of the Defendants.

51.    Pursuant to an Asset Purchase Agreement dated January 29, 2020, Gribben & Associates acquired 2 of the 16 FedEx line haul routes from TER for $600,000.00 ("TER PA"). A true and correct copy of the TER PA is attached hereto as **Exhibit "I"** and is incorporated herein by reference.

a.    The TER PA was executed by Moronta (Alvarez's mother) on behalf of TER.

b.    The TER PA was signed by Gribben on February 28, 2020 (the same day as the Gribben PA).

c.    These two FedEx line haul routes were then agreed to be sold by Gribben & Associates to Gribben Holdings/Blanco pursuant the Gribben PA, dated less than one month later, February 28, 2020.

52.    Pursuant to an another (identical) Asset Purchase Agreement also dated January 29, 2020, Gribben & Associates acquired 7 of the 16 FedEx line haul routes from Glory for $1,400,000.00 ("Glory PA"). A true and correct copy of the Glory PA

is attached hereto as **Exhibit "J"** and is incorporated herein by reference.

    a. The Glory PA was signed by Orosco as the President of Glory.

    b. The Glory PA was signed by Gribben on February 28, 2020 (the same day as the Gribben PA).

    c. These seven FedEx line haul routes were then agreed to be sold by Gribben & Associates to Gribben Holdings/Blanco pursuant the Gribben PA dated less than one month later, February 28, 2020.

53.    As required by SBA SOPs and Byline's commercial underwriting requirements, Byline confirmed equity funded by Borrower, which included certain funds ultimately wired to Byline in the aggregate amount of $1,110,000.00 ("Equity").

54.    $460,000.00 of the Equity was initially traced by Byline back to a Bank of America account held by Alvarez.

    a. On April 27, 2020, $460,000.00, was transferred by Alvarez to a Bank of America account held by Havana, which is a company owned by Blanco and Alvarez.

    b. Alvarez provided Byline with a Gift Letter dated August 13, 2020, indicating that the $460,000.00, was transferred by Alvarez to Havana was a gift, given because Alvarez was a 50% owner of Havana (with Blanco).

    c. On April 27, 2020, $460,100.00, was transferred by Alvarez to a Bank of America account held by Gribben Holdings.

    d. Havana provided Byline with a Gift Letter dated August 13, 2020, indicating that the $460,100.00, was transferred by Havana to Gribben Holdings was a gift, given because Havena was a 50% owner of Gribben Holdings.

    e. On April 29, 2020, $460,000.00, was transferred by Gribben Holdings to Act 1 Escrow Inc., for the benefit of GC Investments I, LLC, a California limited liability company ("GC Investments"), of which

Gribben was the Manager.

    i.  Pursuant to Escrow Instructions between GC Investments and Act 1 Escrow Inc., the funds paid by Gribben Holdings were deposited with Act 1 Escrow Inc. for the purpose of funding GC Investments' acquisition of a California corporation identified as J.M.A.C. International, Inc.

f.  On June 16, 2020, GC Investments directed Act 1 Escrow Inc. to wire $460,000.00 to Gribben Holdings, which funds were wired to Gribben Holdings' account with Bank of America on June 16, 2020.

g.  On June 16, 2020, Gribben Holdings wired $460,000.00 to its account with Byline.

55.  $650,000.00 of the Equity was traced by Byline back to a Bank of America account held by Glory (the former owner of 7 of 16 FedEx line haul routes).

a.  A portion of the $650,000.00 was funded on April 2, 2020, when a brokerage account held by the Trust with Centaurus Financial Inc. wired funds in the amount of $528,963.73 to an account held by Alvarez at Bank of America.

b.  Documentation provided to Byline relating to the Trust evidences, among other things, that the Trust owns and holds business interests in a number of entities including TER (former owner of 2 of the 16 FedEx line haul routes), and that Moronta is the mother of Alvarez.

c.  The Trust provided Byline with a Gift Letter dated August 13, 2020, indicating that the $528,963.73 transferred by the Trust to Alvarez was a gift, given because Alvarez was a 50% owner of in the recipient.

d.  In April 2020, Alvarez transferred funds to a Bank of America account (ending in 5729) held by Glory.

e.  On July 2, 2020, $600,000.00, was transferred by Glory to a different Bank of America account held by Glory (ending in 5716).

    f.  On July 2, 2020, $600,000.00, was wired by Glory to an account at Bank of America held by Gribben & Associates.

    g.  Glory provided Byline with a Gift Letter dated August 17, 2020, indicating that the $600,000.00 wired by Glory to Gribben & Associates was a gift, given because Glory was a business acquaintance of Gribben & Associates.

        i.  The Glory PA evidences that Gribben & Associates paid Glory $1,400,000.00, for 7 of the 16 FedEx line haul routes.

        ii.  This occurred only months before Glory purportedly gifted Gribben & Associates $600,000.00.

    h.  On July 7, 2020, $650,000.00, was wired by Gribben & Associates to an account at Bank of America held by Gribben Holdings.

    i.  On July 7, 2020, Gribben Holdings wired $650,000.00 to its account with Byline.

56.    Subsequent to May 2020, Byline has been in very regular communication with Alvarez and Blanco relating to the SBA Loan and the extremely suspicious sourcing of the Equity, the flip of 7 of 16 FedEx line haul routes, effectively on the same day that Blanco/Gribben Holdings agreed to buy Gribben & Associates from Gribben for approximately $6,000,000.00, the sale (by Gribben as Secretary of Gribben & Associates) of 8 of the 16 FedEx line haul routes, the "loss" of the $1,650,000.00, paid to Gribben & Associates by Armada, the undocumented "loss" of the other FedEx line haul routes, and numerous other statements and documents provided to or obtained by Byline.

57.    Additionally, despite having no personal liability to Byline pursuant to the SBA Loan, Alvarez has made numerous promises to Byline that Alvarez would and will assume or pay off all obligations under the SBA Loan.

58.    In conjunction with these promises, Alvarez has provided numerous additional documents to Byline in support of Alvarez's promises to pay off all

obligations under the SBA Loan.

59.    Documents provided to Byline by Alvarez, along with documentation included in Byline's underwriting of the SBA Loan include tax returns that evidence that Blanco, Alvarez, JNB, Glory, and TER each utilize the same accountant, Katie Choung with Latino Tax and Business Services LLC, located at 642 S Sunset Ave, West Covina, California 91790.

60.    The foregoing constitutes numerous events of default under the Loan Documents.

61.    As a result of the events of default arising under the Loan Documents, Byline has elected to accelerate all amounts due and owing under the Note.

62.    Despite Byline's demands on Borrower and Guarantors to pay the principal, accrued interest, and other charges due and owing under the Note, Borrower and Guarantors have failed and refused, and continue to fail and refuse, to remit payment of the same.

63.    As of January 12, 2024, there was due and owing under the Note the total amount of $3,905,709.75, which consists of outstanding principal of $3,811,704.30, accrued but unpaid interest to January 12, 2024, of $25,846.48, which continues to accrue at the present daily rate of $1,174.84, late charges of $45,522.14, attorneys' fees incurred by Byline through November 14, 2023, of $22,636.83, plus all subsequent costs of collection, including reasonable attorneys' fees, incurred by Byline.

64.    The Loan Documents provide that Borrower and Guarantors shall pay Byline's costs of collection including, but not limited to, reasonable attorneys' fees in the event that Borrower and/or Guarantors default in their respective obligations under the Loan Documents.

65.    Byline has retained the undersigned to enforce its rights and remedies under the above-described Loan Documents and to assist it in the collection of all amounts due and owing under the Note.

///

# FIRST CAUSE OF ACTION

## (Breach of Contract)

66.     For the First Cause of Action of its Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

67.     The Loan Documents are based on adequate consideration except that Borrower and Guarantors have failed to perform their respective duties and obligations thereunder.

68.     Byline has performed all of its duties and obligations under the Loan Documents.

69.     Borrower and Guarantors have breached the terms and conditions of the Loan Documents, which breach has damaged Byline and caused it to incur attorneys' fees and costs of collection.

70.     Byline is entitled to judgment against Borrower and Guarantors for all amounts remaining due under the Note, plus all costs of collection, including reasonable attorneys' fees, incurred by Byline.

71.     Byline is accordingly entitled to relief as set forth in the prayer for relief below.

# SECOND CAUSE OF ACTION

## (Unjust Enrichment)

72.     For the Second Cause of Action of its Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

73.     Byline is in possession of the Note, which evidenced loan advances to Borrower, for which there remains an unpaid principal balance of $3,811,704.30, as of January 12, 2024.

74.     Borrower and Guarantors received the proceeds and benefits from the loan referenced herein, and continues to retain the benefits arising therefrom, without repaying Byline for the same.

75.     Borrower and Guarantors have failed and refused, and continue to fail and

refuse, to remit payment of the loan proceeds advanced under the Note.

76.    Borrower and Guarantors should not benefit from the aforementioned loan proceeds given that Borrower and Guarantors have failed to repay the obligations, as set forth in the Loan Documents.

77.    Borrower and Guarantors will continue to benefit by retaining said loan proceeds and the benefits therefrom without repaying Byline for the same, which presents circumstances which would make it unjust to permit Borrower and Guarantors to retain said loan proceeds and the benefits associated therewith, without repaying the same pursuant to the terms and conditions of the Loan Documents.

78.    Borrower and Guarantors have been unjustly enriched and injustice can only be avoided by ordering payment for damages by Borrower and Guarantors for the total amount due and owing under the Note, plus all costs of collection, including reasonable attorneys' fees, incurred by Byline.

79.    Byline is accordingly entitled to relief as set forth in the prayer for relief below.

## THIRD CAUSE OF ACTION
### (Promissory/Equitable Estoppel)

80.    For the Third Cause of Action of its Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

81.    Borrower and Guarantors made numerous promises and representations to Byline including, without limitation, that Borrower and Guarantors would abide by the terms and conditions of the Loan Documents. These promises and representations were made with the full knowledge that Byline would rely thereon by entering into the loan transaction evidenced by the Loan Documents.

82.    Borrower and Guarantors knew, or should have known, that such promises and representations would induce action or forbearance of a definite and substantial character on Byline's behalf.

83.    Byline did reasonably rely upon the promises and representations of

Borrower and Guarantors by entering into the Loan Documents.

84.    Injustice can only be avoided by estopping Borrower and Guarantors from denying the aforementioned promises and representations and that Byline be entitled to judgment against Borrower and Guarantors for the total amount due and owing under the Note, plus all costs of collection, including reasonable attorneys' fees, incurred by Byline.

85.    Byline is accordingly entitled to relief as set forth in the prayer for relief below.

## FOURTH CAUSE OF ACTION

### (Adjudication of Security Interest)

86.    For the Fourth Cause of Action of its Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

87.    To secure Borrower's and Guarantors' obligations to Byline, Borrower, as grantor, conveyed to Byline a security interest in the Collateral, pursuant to the Security Agreement.

88.    Byline perfected its security interest in the Collateral by filing the Financing Statement.

89.    Byline, as a perfected secured creditor of Borrower, in and to the Collateral, is entitled to relief, as set forth in the Security Agreement and at law.

90.    Byline is accordingly entitled to relief as set forth in the prayer for relief below.

## FIFTH CAUSE OF ACTION

### (Replevin)

91.    For the Fifth Cause of Action of its Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

92.    Pursuant to the terms of the Security Agreement, upon the occurrence of an event of default, Byline is entitled to take possession of the Collateral.

93.    Byline is entitled to the entry of an order authorizing the issuance of a writ

of replevin requiring the U.S. Marshals Service to take the Collateral into the U.S. Marshals Service's possession and deliver it to Byline.

94.    Byline is accordingly entitled to relief as set forth in the prayer for relief below.

## SIXTH CAUSE OF ACTION

### (Fraud/Misrepresentation)

95.    For the Seventh Cause of Action of its Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

96.    Gribben & Associates, Gribben Holdings, JNB, Glory, TER, Havana, DRA Trust, Blanco, Alvarez, Gribben, Orosco, and Moronta (collectively, "Fraud Defendants"), made representations to Byline of existing fact concerning, among other things, the ownership of and value of the Collateral, Borrowers' intention to obtain the SBA Loan to acquire the Collateral, Borrower's acquisition of the Collateral, the sources of equity funds required by Byline and SBA SOPs for Borrower to obtain the SBA Loan, compliance with Byline's underwriting and due diligence requirements, and the use of the SBA Loan proceeds.

97.    The Fraud Defendants represented to Byline, among other things, that the information provided to Byline was true and accurate and was provided in compliance with Byline's underwriting and due diligence requirements and SBA SOPs, that Gribben & Associates owned the Collateral, that the required equity was properly sourced and obtained, that the price paid for the Collateral represented the market value of the Collateral, and that the use of the SBA Loan proceeds was in compliance with the Authorization and SBA SOPs.

98.    The Fraud Defendants concealed or failed to disclose to Byline material facts including, but not limited to, that the price paid for the Collateral represented the market value of the Collateral, that the equity required by Byline and SBA SOPs, was funneled between a number of the Fraud Defendants to cause Byline to believe it was properly sourced, that Borrowers intended to retain the Collateral and conduct business

utilizing the Collateral, and that Borrower and Guarantors intended to abide by the terms and conditions of the Loan Documents.

99.    The Fraud Defendants made these false representations in connection with obtaining the SBA Loan, for the acquisition of Gribben & Associates, with no intention of honoring their representations.

100.    The Fraud Defendants' false representations in connection with obtaining the SBA Loan were of both past and present material facts.

101.    The Fraud Defendants made these representations with knowledge of their falsity or with reckless disregard as to their truth.

102.    The Fraud Defendants acted with the intention of deceiving Byline with respect to their representations made in connection with obtaining the SBA Loan, with the intention of inducing Byline to rely on the Fraud Defendants' false representations and promises.

103.    Byline relied on the false representations and promises made by the Fraud Defendants, which reliance is evidenced by Byline funding the SBA Loan in reliance on the representations of the Fraud Defendants and Borrower's and Guarantors' promises to comply with the terms and conditions of the Authorization and Loan Documents.

104.    Byline's reliance upon the Fraud Defendants' representations was justified and reasonable.

105.    As a result of Byline's reliance upon the Fraud Defendants' false representations, Byline has suffered harm equivalent to all amounts due and owing under the Note, plus all costs of collection, plus attorneys' fees, incurred by Byline.

106.    Byline is accordingly entitled to relief as set forth in the prayer for relief below.

## SEVENTH CAUSE OF ACTION

### (Civil Conspiracy)

107.    For the Eighth Cause of Action of its Complaint herein, Byline restates

and realleges the forgoing Paragraphs as though fully stated herein.

108.   The Fraud Defendants conspired with each other to cause Byline to approve, make, and fund the SBA Loan.

109.   The Fraud Defendants acted in concert, with information knowable only to the Fraud Defendants, for the improper purpose of causing Byline to approve, make, and fund the SBA Loan.

110.   The Fraud Defendants' actions were unlawful, in that the Fraud Defendants had conspired, cooperated, and acted to deceive Byline regarding Borrower's and Guarantors' compliance with Byline's underwriting and due diligence requirements and the SOPs.

111.   As a result of the Fraud Defendants' conspiracy, Byline has suffered harm equivalent to all amounts due and owing under the Note, plus all costs of collection, plus attorneys' fees, incurred by Byline.

112.   Byline is accordingly entitled to relief as set forth in the prayer for relief below.

**EIGHTH CAUSE OF ACTION**

**(Conversion)**

113.   For the Ninth Cause of Action of its Complaint herein, Byline restates and realleges the forgoing Paragraphs as though fully stated herein.

114.   Pursuant to the Security Agreement and Financing Statement, Byline has a valid and perfected security interest in the Collateral.

115.   Armada had actual or record knowledge that Byline has a valid and perfected security interest in the Collateral.

116.   Without the authorization of Byline and without remitting payment to Byline, pursuant to the Armada PA, Armada purportedly purchased 8 of the 16 FedEx line haul routes, which were included in the Collateral, in which Byline holds a valid and perfected security interest in.

117.   Armada's purported purchase of a portion of the Collateral has willfully

1   deprived Byline of its rights in and to that portion of the Collateral.

2   118. Armada's purchase, and subsequent refusal to turn over the Collateral

3   Byline, is an act of conversion.

4   119. Byline has demanded that Armada surrender the portion of the Collateral

5   it purportedly acquired be surrendered to Byline.

6   120. Armada has refused to surrender the portion of the Collateral it

7   purportedly acquired be surrendered to Byline.

8   121. As a direct and proximate result of the conversion of a portion of the

9   Collateral by Armada, Byline has suffered damages in an amount of no less than,

10  $1,650,000.00, equivalent to the Armada Sales Proceeds.

11  122. Byline is accordingly entitled to relief as set forth in the prayer for relief

12  below.

13  **PRAYER FOR RELIEF**

14  **WHEREFORE**, Plaintiff, BYLINE BANK, prays for relief against Defendants,

15  GRIBBEN & ASSOCIATES, INC., a California corporation, GRIBBEN HOLDINGS,

16  INC., a California corporation, JNB TRANSPORT, LLC, a California limited liability

17  company, GLORY ADVANCED SOLUTIONS, INC., a California corporation, TER

18  TRANSPORT, INC., a California corporation, HAVANA INVESTMENT GROUP,

19  LLC, a California limited liability company, THE DRA FAMILY TRUST DATED

20  MAY 31, 2016, ARMADA TRUCKING GROUP INC., a California corporation,

21  JORGE L. BLANCO, DAVER RODRIGUEZ ALVAREZ, STEVEN M. GRIBBEN,

22  ERIC OROSCO, and CRISTINA MORONTA, as follows:

23  1.   Pursuant to the First, Second, and Third Causes of Action set forth in the

24  Complaint herein, that judgment be rendered against Defendants, GRIBBEN &

25  ASSOCIATES, INC., GRIBBEN HOLDINGS, INC., JNB TRANSPORT, LLC, and

26  JORGE L. BLANCO, jointly and severally, in favor of Plaintiff, BYLINE BANK, for

27  the total amount due and owing under the Note of $3,905,709.75, which consists of

28  outstanding principal of $3,811,704.30, accrued but unpaid interest to January 12,

2024, of $25,846.48, which continues to accrue at the present daily rate of $1,174.84, late charges of $45,522.14, attorneys' fees incurred by Byline through November 14, 2023, of $22,636.83, plus all subsequent costs of collection, including reasonable attorneys' fees, incurred by Plaintiff, BYLINE BANK.

2.    Pursuant to the Fourth Cause of Action set forth in the Complaint herein, for declaratory judgment that the obligations of Defendants, GRIBBEN & ASSOCIATES, INC. and GRIBBEN HOLDINGS, INC., under the Note, are secured by Plaintiff, BYLINE BANK's properly perfected security interest in the Collateral.

3.    Pursuant to the Fifth Cause of Action set forth in the Complaint herein, for an order authorizing the issuance of a writ of replevin requiring the U.S. Marshall to take the Collateral into the U.S. Marshall's possession, and deliver it to Plaintiff, BYLINE BANK.

4.    Pursuant to the Sixth Cause of Action set forth in the Complaint herein, that judgment be rendered against Defendants, GRIBBEN & ASSOCIATES, INC., GRIBBEN HOLDINGS, INC., JNB TRANSPORT, LLC, GLORY ADVANCED SOLUTIONS, INC., TER TRANSPORT, INC., HAVANA INVESTMENT GROUP, LLC, THE DRA FAMILY TRUST DATED MAY 31, 2016, JORGE L. BLANCO, DAVER RODRIGUEZ ALVAREZ, STEVEN M. GRIBBEN, ERIC OROSCO, and CRISTINA MORONTA, concluding that said Defendants made numerous misrepresentations constituting fraud against Plaintiff, BYLINE BANK, for the purpose of inducing Plaintiff, BYLINE BANK to make the SBA Loan and that Plaintiff, BYLINE BANK be entitled to entry of judgment against said Defendants, jointly and severally, for the total amount due and owing under the Note of $3,905,709.75, which consists of outstanding principal of $3,811,704.30, accrued but unpaid interest to January 12, 2024, of $25,846.48, which continues to accrue at the present daily rate of $1,174.84, late charges of $45,522.14, attorneys' fees incurred by Byline through November 14, 2023, of $22,636.83, plus all subsequent costs of collection, including reasonable attorneys' fees, incurred by Plaintiff, BYLINE

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**CASE NO. 2:24-cv-927**

BANK.

5.     Pursuant to the Seventh Cause of Action set forth in the Complaint herein, that judgment be rendered against Defendants, GRIBBEN & ASSOCIATES, INC., GRIBBEN HOLDINGS, INC., JNB TRANSPORT, LLC, GLORY ADVANCED SOLUTIONS, INC., TER TRANSPORT, INC., HAVANA INVESTMENT GROUP, LLC, THE DRA FAMILY TRUST DATED MAY 31, 2016, JORGE L. BLANCO, DAVER RODRIGUEZ ALVAREZ, STEVEN M. GRIBBEN, ERIC OROSCO, and CRISTINA MORONTA, concluding that said Defendants conspired and used false information and misrepresentations to cause Plaintiff, BYLINE BANK, to make the SBA Loan and that Plaintiff, BYLINE BANK be entitled to entry of judgment against said Defendants, jointly and severally, for the total amount due and owing under the Note of $3,905,709.75, which consists of outstanding principal of $3,811,704.30, accrued but unpaid interest to January 12, 2024, of $25,846.48, which continues to accrue at the present daily rate of $1,174.84, late charges of $45,522.14, attorneys' fees incurred by Byline through November 14, 2023, of $22,636.83, plus all subsequent costs of collection, including reasonable attorneys' fees, incurred by Plaintiff, BYLINE BANK.

6.     Pursuant to the Eighth Cause of Action set forth in the Complaint herein, that judgment be rendered against Defendant, ARMADA TRUCKING GROUP INC., for its conversion of all or a portion of the Collateral and that Plaintiff, BYLINE BANK be entitled to entry of judgment against said Defendant for the return of that portion of the Collateral or an award of damages against Defendant in favor of Plaintiff, BYLINE BANK for the reasonable value of the portion of the Collateral converted by Defendant, ARMADA TRUCKING GROUP INC.

7.     For attorneys' fees and costs, according to proof.

8.     For an award of prejudgment interest.

9.     For interest upon any judgment entered as provided by law.

10.    For such further and other relief as the Court deems just.

Dated:  February 2, 2024          **DKM Law Group, LLP**

By
          JOSHUA N. KASTAN
          Attorneys for Plaintiff,
          BYLINE BANK


## DEMAND FOR JURY TRIAL

Plaintiff BYLINE BANK hereby demands a trial by jury.

Dated:  February 2, 2024          **DKM Law Group, LLP**

By
          JOSHUA N. KASTAN
          Attorneys for Plaintiff,
          BYLINE BANK